UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS WATSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>THE PROCTER & GAMBLE COMPANY and THE GILLETTE COMPANY LLC,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Thomas Watson ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants The Procter & Gamble Company and The Gillette Company LLC ("Defendants") for the manufacture, marketing, and sale of consumer products sold under brand names that include Gillette, Venus, Braun, and Oral-B (the "Products"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## <u>NATURE OF ACTION</u>

1.      This is a class action against Defendants for the marketing, manufacture and/or sale of consumer products (the "Products"), the warranties of which include statements that condition the continued validity of the warranty on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement"). Tying arrangements that condition a consumer product's warranty on the use of a specific repair service in this manner violate state and federal law. Further, Defendants exacerbate these violations by stating on the outside of the product packaging that the Products include a one-year limited warranty, but the unlawful repair restriction is not revealed to the consumer until after the point of sale. Thus, a reasonable

1

consumer would rely on the warranty mentioned on the outside of the packaging.  Had Plaintiff –

or reasonable class members – been aware of the unlawful repair restriction, he would not have

purchased the Product, or would have paid significantly less for it.

2.      Plaintiff brings his claims against Defendants individually and on behalf of a class

of all other similarly situated purchasers of the Products for: (i) violations of the Magnuson-Moss

Warranty Act, (ii) unjust enrichment, (iii) fraud, and (iv) fraudulent omission.

## PARTIES

3.      Plaintiff Thomas Watson is, and at all times relevant to this action has been, a

resident of Shirley, Massachusetts and a citizen of Massachusetts.  In or about June 2019, Mr.

Watson purchased one Braun Electric Shaver from a Target store located at 86 Orchard Hill Park

Dr, Leominster, MA 01453.  Mr. Watson purchased the Product, reasonably believing its

warranty complied with state and federal law and believing that he would have the ability to

repair the product if it malfunctioned.  However, the Product Mr. Watson purchased did not

comply with state and federal law because of the unlawful repair restriction attached to the

warranty which prohibited him from repairing the Product.  Mr. Watson would not have

purchased the Product, or would have paid significantly less for the Product, had he known that

the Product did not comply with state and federal law.  The unlawful repair restriction attached

to his warranty was only revealed to him after purchasing the product and opening the packaging

at home.

4.      The Product that Mr. Watson purchased began to slightly malfunction shortly

after he purchased it.  He would have liked to endeavor to repair his product himself during the

warranty period, but his warranty as written prohibited him from doing so.

5.      Mr. Watson reviewed the Product's packaging prior to purchase.  Mr. Watson relied on the packaging in making his purchase decision.  Defendants disclosed on the packaging that the Product included a one-year limited warranty but did not disclose that the warranty included an unlawful repair restriction.  Had there been a disclosure, Mr. Watson would not have purchased the Product because the unlawful repair restriction would have been material to him, or at the very least, he would have purchased the Product at a substantially reduced price.

6.      Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business at 1 Procter & Gamble Plaza, Cincinnati, Ohio 45202.  Defendant The Procter & Gamble Company markets and distributes the Products throughout the United States. Defendant The Procter & Gamble Company sells its products to consumers on websites and retail stores nationwide.

7.      Defendant The Gillette Company LLC is a Delaware limited liability company with its principal place of business at 1 Granite St, Boston, Massachusetts 02210.  Defendant The Gillette Company LLC markets and distributes the Products throughout the United States. Defendant The Gillette Company LLC sells its products to consumers on websites and retail stores nationwide.  Defendant The Gillette Company LLC is a wholly owned subsidiary of Defendant The Procter & Gamble Company.

8.      Each of the Defendants acted jointly to perpetrate the acts described herein. At all times relevant to the allegations in this matter, each of these Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(d) because there are more than 100 class members and the aggregate amount in

controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class

member is a citizen of a state different from Defendants.

10.     This Court has personal jurisdiction over both Defendants because Defendants

conduct substantial business within this District and a substantial portion of the events that gave

rise to Plaintiff's claims occurred in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants

do substantial business in this District, and a substantial part of the events giving rise to

Plaintiff's claims took place within this District because Plaintiff purchased his Product and

suffered his resulting injury in this District.

## COMMON FACTUAL ALLEGATIONS

### I.      Defendants' Business Activities

12.     Defendants distribute consumer products to retailers throughout the United States,

who then sell the appliances to consumers.

13.     Defendants' products and brands include Gillette, Venus, Braun, and Oral-B,

among others.

14.     All the relevant Products include the same unlawful repair restriction in their

warranties.

15.     Defendants have advertised, marketed, offered for sale, sold, and distributed

products through authorized dealers to consumers.

16.     Defendants' Products include a "written warranty" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty Statement").

17.     The length of the limited warranty offered by Defendants is two years.

18.     Defendants' limited warranty includes the aforementioned unlawful repair restriction.

## II.     The Defendants Condition Warranty Coverage On Unlawful Repair Restrictions

19.     In numerous instances, Defendants, through their warranty statements for various appliances, condition warranty coverage on the usage of Defendants' repair services to perform maintenance and repair work, rather than allowing consumers to repair the product themselves or take it to a third-party repair service.

20.     Specifically, Defendants' warranty states: "The guarantee becomes void if repairs are undertaken by unauthorized persons and if original Braun parts are not used."[1]

21.     Under the terms of the warranty, Defendants are not obligated to provide first party repair service and parts free of charge.

22.     Under the terms of the warranty, purchasers are bound to only use authorized repair services and original Braun parts.

23.     The authorized replacement parts that purchasers are required to use are available online at inflated costs.[2]

---

[1] https://www.service.braun.com/line/SH/S5281/S5281_1_GB.pdf, pg 5

[2] *See* https://braun.factoryoutletstore.com/cat/18735/Braun-Clean-Renew-Stands.html

24.     Defendants in effect provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts.

25.     By conditioning their warranty in this manner, Defendants have violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on the consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

26.     Defendants' practices also violate state laws, as well as Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

**III.     The Magnuson-Moss Warranty Act**

27.     The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes.  It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

28.     Section 2302(c) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

6

29.     An FTC Rule interpreting this provision specifically addresses warranty language

(nearly identical to Defendants' warranty):

> No warrantor may condition the continued validity of a warranty
> on the use of only authorized repair service and/or authorized
> replacement parts for non-warranty service and maintenance (other
> than an article of service provided without charge under the
> warranty or unless the warrantor has obtained a waiver pursuant to
> section 102(c) of the Act, 15 U.S.C. 2302(c)).  For example,
> provisions such as, "This warranty is void if service is performed
> by anyone other than an authorized 'ABC' dealer and all
> replacement parts must be genuine 'ABC' parts," and the like, are
> prohibited where the service or parts are not covered by the
> warranty.  These provisions violate the Act in two ways.  First,
> they violate the section 102(c), 15 U.S.C. 2302(c), ban against
> tying arrangements. Second, such provisions are deceptive under
> section 110 of the Act, 15 U.S.C. 2310, because a warrantor
> cannot, as a matter of law, avoid liability under a written warranty
> where a defect is unrelated to the use by a consumer of
> "unauthorized" articles or service.

16 CFR § 700.10(c)

## IV.     Section 5 Of The Federal Trade Commission Act

30.     The FTC has found that a "manufacturer's use of a repair restriction could be

challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes

substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not

outweighed by countervailing benefits to consumers or competition that the practice produces,

and the injury could not have been reasonably avoided by consumers."[3]

31.     Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive

actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section

5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and

---

[3] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 14.

other anticompetitive conduct.  *See*, *e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

32.     The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic waste, and unnecessarily increase wait times for repairs.  In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[4]

33.     The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action.

34.     The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[5]

35.     The FTC has also expressed concern that repair restrictions "may place a greater financial burden on communities of color and lower-income Americans."[6]

36.     While manufacturers explain that these repair restrictions often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences

---

[4] https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf, pg 1.

[5] "Nixing the Fix: An FTC Report to Congress on Repair Restrictions", available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 6.

[6] *Id.* at 5.

resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[7]

37.     Here there is no justification for Defendants' repair restrictions since the technology inside many of Defendants' Products (such as their electric razors) are well known and simple, and the repair restriction is not relevant as to any consideration of personal injury or improper repairs.[8]

38.     Due to these factors, on July 21, 2021, the FTC unanimously voted to ramp up law enforcement against repair restrictions that prevent small businesses, workers, consumers, and even government entities from fixing their own products.[9]

<strong><u>CLASS REPRESENTATION ALLEGATIONS</u></strong>

39.     Plaintiff seeks to represent a class defined as all purchasers of Gillette, Venus, Braun, and Oral-B products in the United States with a warranty provision that prohibits self-repair and/or the use of unauthorized parts (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

40.     Plaintiff also seeks to represent a subclass of all Class Members who purchased the relevant products in the state of Massachusetts with a warranty provision that prohibits self-repair and/or the use of unauthorized parts (the "Massachusetts Subclass") (collectively with the Class, the "Classes").

---

[7] *Id.* at 10.

[8] *See* https://www.lasko.com/resources/warranties/, "This warranty does not apply if the product was damaged or failed because of accident, improper handling or operation, shipping damage, abuse, misuse, unauthorized repairs made or attempted."

[9] https://www.ftc.gov/news-events/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions.

41.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

42.     At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Massachusetts Subclass ("Class Members" and "Subclass Members," respectively) but believes it numbers in the millions.  Given the size of the Defendants' operation and the number of retail stores in the United States selling Defendants' Products, Plaintiff believes that Class and Subclass Members are so numerous that joinder of all members is impracticable.

43.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

    (a)     Whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

    (b)     whether Defendants' conduct was unfair and/or deceptive;

    (c)     whether Defendants have been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiff and the Classes;

    (d)     whether Plaintiff and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages;

(e) whether Defendants' conduct violates the Magnuson-Moss

Warranty Act; and

(f) whether Defendants' conduct violates section 5 of the Federal

Trade Commission Act.

44. Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, purchased, in a typical consumer setting, Defendants' Products, and Plaintiff sustained damages on account of Defendants' wrongful conduct.

45. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Classes.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the potentially low individual damages suffered by individual class members.

47. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not.  In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

**COUNT I**
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq*.**

48. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

49.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

50.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

51.     Plaintiff and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

52.     Defendants are suppliers and warrantors as defined by the Warranty Act because they are suppliers or other persons who give or offer to give a written warranty or who are or may be obligated under an implied warranty.  15 U.S.C. § 2301(4) and (5).

53.     No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). 16 CFR § 700.10(c).

54.     In connection with the marketing and sale of the Product, Defendants have conditioned a warranty on the consumer's using, in connection with the warranted Product, with the use of only an authorized repair service and/or authorize replacement parts. 16 CFR § 700.10(c).

55.     Specifically, Defendants state: "The guarantee becomes void if repairs are undertaken by unauthorized persons and if original Braun parts are not used."

56.     By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiff and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby economically damaging Plaintiff and the Class and Subclass Members.

57.     Plaintiff and the Class and Subclass Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products if they knew the truth about the deceptive nature of the Products or would have paid substantially less for them.

## COUNT II
### Unjust Enrichment

58.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

59.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

60.     Plaintiff and members of the Classes conferred benefits on Defendants by purchasing the Product.

61.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class and Subclass Members' purchases of the Product.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants failed to disclose that the Products contained an unlawful repair restriction until after the point of sale.  These omissions caused injuries to Plaintiff and Class and Subclass members because they would not have purchased the Products if the true facts were known or would have paid substantially less for the product.

62.     Retention of those moneys also is unjust and inequitable because, as alleged above, Defendants include an unlawful repair restriction on their Products that is not disclosed until after the point of sale.

63.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendants must pay

restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

## COUNT III
### Fraud

64.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

65.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

66.     As discussed above, Defendants provided Plaintiff and members of the Classes with false or misleading material information about the Products.

67.     Specifically, Defendants indicated to Plaintiff and members of the Classes that they would be unable repair or use parts not authorized by Defendants on the products that they had just purchased.  Defendants added this provision knowingly in order to encourage Plaintiff and members of the Classes to purchase new Products and replacement parts at inflated prices rather than repair older Products or purchase third-party parts.

68.     Defendants misrepresented that these unlawful repair restrictions were binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

69.     Defendants exacerbated these misrepresentations because the unlawful repair restrictions were not revealed to Plaintiff and members of the classes until after the point of sale.

70.     These misrepresentations were made with knowledge of their falsehood.

71.     The misrepresentations made by Defendants, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced

Plaintiff and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the product than they would have.

72.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the Classes in the form of price premiums and are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
### Fraudulent Omission

73.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

75.     This claim is based on fraudulent omissions concerning the unlawfulness of the repair restrictions that are included in Defendants' warranties.  As discussed above, Defendants failed to disclose that the Products included a restriction that ostensibly prevented Plaintiff and members of the class from repairing their products themselves until after the point of sale.

76.     The false and misleading omissions were made with knowledge of their falsehood.  Defendants manufacture, market, and sell consumer electronics nationwide and know that the FTC has stated that repair restrictions of the type that appears on Defendants' warranty are unlawful.  Nonetheless, Defendants continued to include their unlawful repair restrictions on their Products and continue to fail to reveal such restrictions to consumers until after the point of sale.

77.      The false and misleading omissions were made by Defendants, upon which Plaintiff and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the Classes to purchase

Products that they otherwise would not have or at least pay substantially more for the Products than they otherwise would have.

78.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the proposed Classes, who are entitled to damages and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)    For an order certifying the nationwide Class and Massachusetts Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Massachusetts Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Massachusetts Subclass Members;

(b)    For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff, the nationwide Class, and the Massachusetts Subclass on all counts asserted herein;

(d)    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e)    An award of statutory penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    For an order awarding Plaintiff, the Class, and Massachusetts

Subclass their reasonable attorneys' fees and expenses and costs of

suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so

triable.

Dated:  January 21, 2022                              Respectfully submitted,

**REARDON SCANLON LLP**

By: */s/ James J. Reardon, Jr.*
        James J. Reardon, Jr.

James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
Email:  james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Julian C. Diamond (*Pro Hac Vice forthcoming*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7011
Facsimile:  (212) 989-9163
Email: jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Neal Deckant (*Pro Hac Vice forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com

*Attorneys for Plaintiff*